LOTTINGER, Judge.
This is a suit wherein the plaintiff seeks to recover from the defendant insurance company the sum of $135.89, plus double that amount as a penalty, plus attorney’s fees in the sum of $1,000.
The petition alleges that on March 1, 1952, petitioner was an employee of the United States Post Office, Baton' Rouge, Louisiana, and that while so employed, defendant issued to him a policy of insurance bearing Certificate No. 114, Class 01, effective as of that date. It is averred that the policy provided for benefits in case of accidental death, loss of sight, dismemberment and hospital expenses for petitioner and his wife, as a dependent, in certain maximum amounts as therein set out. The policy is also alleged to contain the following:
“If the hospital confinement of the dependent of an employee is on account of pregnancy, which term shall include resulting child birth, miscarriage, or complications, resulting therefrom, the benefit shall be payable on the same basis as any other type of insurance benefit for disability; provided, however, that no Dependents Hospital Expense Benefits will be paid for any confinement on account of pregnancy if such confinement commences within nine- months after the last date upon which the employee’s insurance with respect to such dependent became effective under this Rider.
“Hospital confinement of a dependent for child birth or miscarriage caused by pregnancy which originated prior to termination of the insurance hereunder with respect to such dependent shall also be considered as the basis for a claim under this provision if such confinement commences within nine months after termination of such insur-anee hereunder; such claim, however, *407 ■shall be subject to the same conditions as though such hospital confinement had commenced while such dependent was insured under this Rider.”
The further allegation is made that on "September 28, 19S3, the petitioner’s employment with the Post Office and his insurance contract as well, terminated, and that on or about November 1, 1953, the insurer amended the schedule of payments by inserting the following:
“With respect to the Daily Benefit and/or Special Charges, the employee shall pay the first $25.00 for any hospital charges for any one continuous period of disability. The $25.00 that the employee is required to pay shall be applied first to the Daily Benefit and any excess will apply to the Special Charges.
“The benefits' contained in this amendment apply to any expense incurred on or subsequent to November 1, 1953.
“This amendment is to be attached to and. made a part of your certificate and is effective as of November 1, 1953.”
The petition then goes to recite that petitioner’s wife was hospitalized and delivered of a baby on May 27, 1954, and that she remained in the hospital for three days. Special charges, surgical expenses and hospitalization expenses, it is alleged, totaled $135.89 which amount was duly and timely claimed from defendant who refused to pay said amount to petitioner but who did deliver to him a check for $110.89, being the amount claimed less $25 under the deductible clause quoted above. The final allegation of the petition is that the defendant, having failed to pay the full amount of the claim within 30 days from written date of notice and proof of claim, is therefore subject to a penalty of double the-amount of the claim plus attorney’s fees.
The defendant first filed an exception of no cause of action. The plaintiff then filed a supplemental and amended petition wherein it was alleged: that the Postal Credit Union of Baton Rouge (previously alleged to be the employer of plaintiff) had no separate legal entity and paid no part of the insurance premium, same being paid exclusively by the Postal employees themselves; that the amendment to the insurance contract dated November 1, 1953, was not binding on plaintiff as he did not consent to same and did not even know of it; that the defendant’s check in the amount of $110.89 which had been delivered to plaintiff had not been cashed by the latter; and that the defendant had knowledge that plaintiff was no longer employed after September 28, 1953, and had not, therefore, consented to the reduction in benefits as provided in the rider of November 1, 1953.,
An exception of no cause of action was filed as to the amended petition and overruled. The defendant then answered, denying that plaintiff was an employee of Postal Credit Union and denying further that Certificate No. 114 Class 01 was issued to him. Receipt of the proof of claim was admitted but an indebtedness to plaintiff of $135.89 was denied. The allegation is made that under the terms of the contract only members of the Postal Credit Union were eligible for coverage and that the plaintiff was not on March 1, 1952, and has never been a member of same, consequently not being covered under the terms of the policy and not entitled to any benefits thereunder. It is further averred that the fact that plaintiff was not a member of the Postal Credit Union was not known to defendant until after the institution of this suit and that a prior claim of petitioner had been erroneously paid him. It was further pleaded that the Postal Credit Union was a duly incorporated body and separate legal entity with full authority to contract and, alternatively, that if plaintiff was entitled to any benefits', he was bound by the $25 deductible clause of November 1, 1953, and thus entitled only to $110.89 as previously tendered him.
*408 Following trial on the merits in the Court below, judgment was rendered rejecting the plaintiff’s demands and the matter is now before us on an appeal taken by him.
The record contains a stipulation of fact which sets forth substantially the following:
1. That plaintiff was employed by the Baton Rouge Post Office on March 1, 1952 and for some time prior.
2. That defendant issued a group hos* pitalization policy on March 1, 1952, to Postal Credit Union — Baton Rouge Post Office, as policy holder.
3. That Certificate No. 114, effective as of March 1, 1952, was issued plaintiff.
4. That the policy was renewed on March 1, 1953, at which time rates were raised for dependent hospital, surgical and medical coverage.
5. That the premium on the policy was paid defendant monthly by one remittance by the Postal Credit Union which obtained the funds for making the remittance from each of the individuals who paid their share.
6. That plaintiff, from March 1, 1952, through September, 1953, paid monthly, to the Postal Credit Union, his pro rata cost of the insurance protection.
7. That plaintiff terminated his employment with the Post Office on September 28, 1953, and was re-employed and returned to work on May 3, 1954.
8. That neither plaintiff nor his wife, on March' 1, 1952, or at any time thereafter, was a member or employee of the Postal Credit Union.
9. That on November 1, 1953, the group policy with the Postal Credit Union was amended so that certain benefits were reduced and others increased.
10. That plaintiff’s wife was hospitalized from May 27 through May 29, 1954 and delivered of a full term infant on May 27.
11. That due notice and proof was given defendant showing hospital expenses in the sum of $135.89.
12. That defendant, upon receipt of such proof, sent plaintiff its check in the sum of $110.89, which was retained by plaintiff who made ..demand on defendant for $135.89, offering to return the check for $110.89.
13. That notice of the proposed amendment to the policy was given by the Postal Credit Union to its members in the same manner as were other notices, by mail and by posting in conspicuous places in the building, and the amendment was adopted with their knowledge and upon their authority.
14. That the Postal Credit Union is a duly organized corporation under the laws of Louisiana with authority to contract in its own name.
15. That one J. T. Burns was defendant’s agent at the time the policy was written and made all negotiations relative thereto. His employment ceased on February 24, 1953.
16. That the Baton Rouge Post Office, as of March 1, 1952, and since, as an agency of the United States Government, either could not or would not purchase a group policy, nor would it act as policyholder, nor would it deduct sums from its employees, although authorized by them, for the payment of such insurance costs.
The testimony adduced at the trial adds little to those facts set out in the stipulation or admitted in the pleadings. Mr. John D. Calabrese, Treasurer of the Postal Credit Union called on Cross Examination by counsel for plaintiff, testified that some of the postal employees were members of the credit union and some were not. He knew that plaintiff was not a member of the organization, but testified that the defendant was not aware of this fact. He explained the matter as follows:
“That was the understanding, when Mr. Burns contacted each Post Office *409 employee. That was the intention in the beginning Your Honor, when we started this thing that has been brought out here that we couldn’t get a hospital group insurance for the employees through the Federal Government, it’s against the law, that’s all, so we merely sponsored this thing so that employees could have it. The intent from the beginning was honorable, we were trying to get members in that were members of the Credit Union, but that would be sort of discrimination against those non-members, they all wanted to come in — they were employees, and they were entitled to it — and these men had thirty days to come into this policy, and we can’t take them in the Credit Union within thirty days because they are still on what we call a probationary basis, so that wouldn’t be fair to these new employees, so the Board talked this matter over and we just decided to let anyone come in the plan because they could possibly be future members of the Credit Union.”
In response to questions from the Trial Judge this witness stated that there was no reason why the plaintiff could not have joined the Credit Union, and the fact that he was not a member was not made known to the defendant until after suit was filed.
The plaintiff testified that he made his payments monthly to the credit union and that he was unaware that he was supposed to be a member. He stated that the defendant paid a prior claim of his and that it was not until after the institution of the suit that he learned that eligibility for coverage depended on membership in the Postal Credit Union.
Mr. Wallace Smith, Director of Sales of Groups and Pension Department of Pan-American Life Insurance Company, testified in response to a question by the Trial Judge that membership in the Postal Credit Union was a condition precedent to the validity of the policy and, further, that the company had no knowledge that any one was insured other than members of the Postal Credit Union.
The question presented for determination is simply whether the plaintiff was bound by the terms of the rider of November 1, 1953, which inserted the $25 deductible clause in the policy. We think that he was.
In the first place, it is clear to us from the facts and testimony set out above that the plaintiff was never entitled to coverage under the policy. He was never a member of the Postal Credit Union and, consequently, ineligible for coverage. There was no impediment to plaintiff having become a member of the Postal Credit Union. Those who did belong were entitled to coverage and bound by the provisions of the rider. We are unable to see how the plaintiff, who was not a member and who was not entitled to coverage, could be entitled to recover greater benefits than those who were eligible and who were covered.
For the reasons assigned, the judgment appealed from is affirmed.
Judgment affirmed.